2024 IL App (1st) 230921-U

No. 1-23-0921

Order filed September 30, 2024.

First Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 12 CR 5317 |
| | ) | |
| ERIC COATES, | ) | The Honorable |
| | ) | Kenneth Wadas, |
| Defendant-Appellant. | ) | Judge Presiding. |

_____

JUSTICE LAVIN delivered the judgment of the court.
Justice Cobbs concurred in the judgment.
Justice Pucinski specially concurred.

**ORDER**

¶ 1    *Held*:  Where the record does not show that postconviction counsel believed defendant's *pro se* postconviction petition was frivolous and patently without merit, counsel was not obligated to withdraw, and defendant failed to rebut the presumption that counsel provided reasonable assistance.

¶ 2    Defendant Eric Coates appeals from the second-stage dismissal of his petition for relief

filed pursuant to the Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq.* (West 2020)).

On appeal, defendant contends that he received unreasonable assistance of postconviction counsel because counsel failed to amend his petition to include a potentially meritorious claim or withdraw as counsel so he could pursue such a claim himself or with the aid of private counsel. For the reasons that follow, we affirm.

¶ 3    Defendant's conviction arose from the September 21, 2011, shooting of Arayn Ben Whithers in Chicago, when defendant was 16 years old. Following a 2014 bench trial, defendant was found guilty of attempted murder and aggravated battery with a firearm and sentenced to concurrent terms of 31 and 30 years in prison, respectively. We affirmed on direct appeal. See *People v. Coates*, No. 1-15-2071 (2017) (unpublished summary order under Illinois Supreme Court Rule 23(c)).

¶ 4    At trial, Whithers, a barbershop owner, testified that around 10 a.m. on the day in question, he was moving some equipment into the shop from his van, which he had parked in front of the shop. He saw defendant, whom he identified in court, walking past by himself. Whithers had seen defendant on numerous other occasions, loitering in front of the shop, and had repeatedly told him to move and not obstruct the door.

¶ 5    Defendant said something to Whithers, who "waved him off." Whithers told defendant he had too much going on in his life at the moment and asked him to move on. Defendant answered, "F*** that. I don't care." Defendant, who was about four feet from Whithers, pulled a gun from his waistband and fired four shots. Whithers raised his left arm to cover his face. He was shot once in his left forearm, twice in his "frame," and once in his pelvic area. Defendant ran from the scene.

¶ 6    Whithers entered his barbershop and wrapped himself in a towel in an attempt to stop the bleeding. He then moved back to the doorway and collapsed on the doorstep. An ambulance

arrived and Whithers was transported to the hospital, where he stayed for about a month, being treated for the gunshot wounds. Seven days after the shooting, he identified defendant as the shooter in a photo array and, a few months later, in a lineup.

¶ 7     Norman C. Hall, Jr., an Occupational Safety and Health Administration (OSHA) inspector for People's Gas and ComEd, testified that, around 10 a.m. on the day in question, he was conducting a site inspection on the corner directly east of the barbershop. He observed Whithers going back and forth between the barbershop's doorway and a van. He then saw a man "coming up rather fast" and engaging Whithers in conversation. He described the man as 16 to 19 years old, about 5' 8" tall, with a medium complexion and longer, bushy hair. The man was wearing a hoodie, so Hall was not able to see his face.

¶ 8     Hall saw a firearm "appear" in the man's hand. The man fired three shots, after which Whithers staggered into the barbershop's doorway. Hall moved his work crew into a safe position and then approached the barbershop, where he saw Whithers lying in the doorway, bleeding profusely.

¶ 9     On cross-examination, Hall estimated that he was about 30 feet from the shooting and stated that nothing obstructed his view. He denied that Whithers and the other man had engaged in a physical altercation. He also clarified that he could not hear any voices but, rather, assumed Whithers and the man were talking. On redirect, he estimated that Whithers and the man were about two to three feet apart during the incident.

¶ 10    The parties stipulated, among other things, that four spent shell casings were recovered from the scene and that all four were determined to have been fired from the same firearm.

¶ 11    Defendant testified that in September 2011, he was 16 years old. About a week prior to the shooting, he "had contact" with Whithers. Specifically, in defendant's presence, Whithers had an argument with defendant's brother, Terrence, inside a local corner store. After exchanging words, Terrence and Whithers grabbed each other by the neck, Whithers punched Terrence in the face, "and they went to fist fighting."

¶ 12    Around 10 a.m. on the day in question, defendant was walking past the barbershop on his way home from the corner store when Whithers approached him and said, "You know I could have got your a***, right? I should stab you." Defendant answered, "[T]hat's nice, but I appreciate it if you leave me alone." At that point, Whithers grabbed defendant's shoulder, shoved him against a wall, and punched him in the face. Defendant "saw a silver light" and was blinded for "a little bit," but remained conscious. Whithers pulled a gun from his waistband and repeatedly hit defendant in the face with its butt. Defendant saw "silver lights and rainbows" and "blanked out." He tussled with Whithers in an attempt to push him away and get loose from his hold.

¶ 13    After the "last blow," Whithers dropped the gun. Defendant "went for the weapon." Whithers was still coming at him, so, in fear for his life, and to prevent Whithers from attacking him again, defendant picked up the gun, aimed it at Whithers, and pulled the trigger. Whithers kept "rushing" him, so he continued to fire. Once Whithers was "off," defendant stopped firing and ran. He left the gun in a building near his house and called his cousin. He did not call the police because he was scared.

¶ 14    The trial court found defendant guilty on all counts. Defendant filed a posttrial motion, which the trial court denied. The court subsequently sentenced defendant to concurrent terms of

31 years in prison for attempted murder and 30 years in prison for aggravated battery with a firearm.

¶ 15    On direct appeal, we rejected defendant's contention that he was entitled to a hearing under *People v. Krankel*, 102 Ill. 2d 181 (1984). We also rejected his contention that he was entitled to a new sentencing hearing, explaining that, pursuant to *People v. Hunter*, 2017 IL 121306, the 2016 statutory amendment permitting trial courts discretion in juvenile sentencing for the previously mandatory firearm add-on did not apply retroactively to juveniles who were sentenced before the amendment took effect. However, we agreed with the parties that defendant's sentence violated the one-act, one-crime doctrine, vacated his 30-year sentence for aggravated battery with a firearm, and ordered the mittimus corrected. *People v. Coates*, No. 1-15-2071 (2017) (unpublished summary order under Illinois Supreme Court Rule 23(c)).

¶ 16    On January 27, 2020, defendant filed a *pro se* postconviction petition under the Act. In the opening paragraph, defendant indicated that he prepared the petition with the assistance of an inmate law clerk due to his "Serious Mental Illness (SMI) Status, and inability to present his claim in light of his SMI Status." Defendant stated that he was being housed in the "STC Unit" because he suffered from major depression with psychosis, bipolar disorder, and insomnia. He asserted that "[f]or this reason," he had been unable to file his petition in a timely manner and had only recently found someone to assist him.

¶ 17    Substantively, the petition raised three claims. First, defendant claimed that he was denied effective assistance of trial counsel for not raising a sudden and intense passion argument at sentencing to reduce his sentence to that of a Class 1 felony and of appellate counsel for not raising trial counsel's ineffective assistance. Second, defendant claimed that the imposition of the

mandatory 25-year firearm enhancement violated the proportionate penalties clause of the Illinois Constitution, the eighth amendment of the U.S. Constitution, and the double jeopardy and separation of powers clauses of both constitutions. Third, defendant claimed that trial counsel was ineffective for not alleging that he was illegally arrested pursuant to an investigative alert, rather than a warrant, and appellate counsel was ineffective for not raising trial counsel's ineffective assistance. Defendant attached Illinois Department of Corrections psychiatric progress notes from November 2019 to the petition.

¶ 18 On October 13, 2020, counsel appeared on defendant's behalf at a status hearing and requested the release of common law records and transcripts. The record does not reflect when the petition was docketed for second-stage proceedings, why it was so docketed, or when counsel was appointed.

¶ 19 On nine subsequent court dates over the next two years, counsel reported to the court on her progress, indicating, among other things, that she was waiting for the release of records, needed to speak with defendant's trial attorney, and was consulting with a mitigation expert.

¶ 20 On November 28, 2022, counsel filed a certificate pursuant to Illinois Supreme Court Rule 651(c) (eff. July 1, 2017). In the certificate, counsel stated that she had consulted with defendant by phone, mail, electronic means, or in person to ascertain his contentions of deprivation of constitutional rights; examined the common law record, report of proceedings, and exhibits, and conducted investigations relevant to defendant's postconviction claims; and examined the decision on direct appeal. Counsel stated that she had not made any amendments to the *pro se* petition and did not believe any amendments were necessary for an adequate presentation of defendant's contentions.

¶ 21 On January 30, 2023, the State filed a motion to dismiss the petition, arguing that it was not timely filed, that defendant had not attached an affidavit or other document to show how his mental illness impacted his ability to file a timely petition, and that he had not asserted a mental illness at trial. The State also, "[f]or the sake of argument," argued that defendant's claims failed on the merits. Specifically, the State asserted that defendant's arrest pursuant to an investigative alert was legal because it was based on probable cause, that his sentencing issues were forfeited, and that his 31-year sentence did not constitute a *de facto* life sentence.

¶ 22 On March 22, 2023, counsel filed a response, arguing that defendant's mental health diagnosis and treatment for major depressive disorder with psychosis, bipolar disorder, antisocial personality disorder, "cannabis UD," and insomnia, along with his inability to find or retain someone to assist him, prevented him for completing and filing his *pro se* postconviction petition in a timely manner. Counsel further argued that, throughout defendant's incarceration, he had been prescribed "a multitude of medications," and that his mental health and the side effects of the medications made it difficult for him to complete his petition in a timely manner. Counsel asserted that the evidence established defendant was not culpably negligent in filing his petition in an untimely manner. As such, counsel urged that the court deny the State's motion to dismiss and "allow the petition to proceed to an argument on its merits and grant an evidentiary hearing."

¶ 23 On May 10, 2023, the circuit court held a hearing on the State's motion to dismiss. At the hearing, counsel stated, "I'm resting on the pleadings that I filed. I spoke to [defendant] about the reasons about his petition and so we're just resting on our pleadings." The State, noting that defendant was making an argument that mental illness prevented him from filing his petition on time but had not asserted a mental illness at trial, argued that defendant was "using it as a shield

when they need to but not at other times." Defense counsel replied that "all our responses to the timeliness are contained within our written response to the State's motion to dismiss."

¶ 24    The circuit court granted the motion to dismiss, stating that it agreed with the State's "position." The court further stated as follows:

"I remember the facts of the case fairly well, and I think the defendant was outside the time limit on the one issue, and the ineffective assistance of counsel issue is not meritorious. Appellate counsel was not ineffective for not briefing issues without merit. Sentencing issues were waived and have no merit."

¶ 25    Defendant filed a timely notice of appeal.

¶ 26    On appeal, defendant contends that he received unreasonable assistance of postconviction counsel.

¶ 27    At the second stage of postconviction proceedings, appointment of counsel is a statutory, rather than constitutional, right. 725 ILCS 5/122-4 (West 2018); *People v. Suarez*, 224 Ill. 2d 37, 42 (2007). Under the Act, petitioners are entitled to a "reasonable" level of assistance of counsel. *People v. Addison*, 2023 IL 127119, ¶ 19. To ensure this level of assistance, Rule 651(c) imposes three duties on appointed postconviction counsel. *Id.* ¶ 20. Pursuant to the rule, either the record or a certificate filed by the attorney must show that counsel (1) consulted with the petitioner to ascertain his contentions of constitutional deprivations, (2) examined the record of the trial proceedings, and (3) made any amendments to the filed *pro se* petition necessary to adequately present the petitioner's contentions. Ill. S. Ct. R. 651(c) (eff. July 1, 2017); *Addison*, 2023 IL 127119, ¶ 20.

¶ 28 The filing of a Rule 651(c) certificate creates a rebuttable presumption that postconviction counsel provided reasonable assistance, and substantial compliance with the rule is sufficient. *People v. Profit*, 2012 IL App (1st) 101307, ¶ 19. A defendant bears the burden of overcoming the presumption of reasonable assistance by demonstrating his attorney's failure to substantially comply with the duties mandated by Rule 651(c). *Id.* Our review of an attorney's compliance with Rule 651(c) and of the dismissal of a postconviction petition without an evidentiary hearing is *de novo*. *Id.* ¶ 17.

¶ 29 In this case, postconviction counsel filed a Rule 651(c) certificate. Therefore, the presumption exists that defendant received the representation required by the rule. *Id.* ¶ 19. That is, a presumption exists that defendant received reasonable assistance of postconviction counsel. *People v. Hayes*, 2016 IL App (3d) 130769, ¶ 12.

¶ 30 Defendant acknowledges that counsel filed a Rule 651(c) certificate. Nevertheless, he contends that counsel provided unreasonable assistance where she failed to amend his petition to include a potentially meritorious claim or withdraw as counsel so he could pursue such a claim himself or with the aid of private counsel. He argues that counsel "knew [his] *pro se* claims had no merit," as (1) an argument for sentencing as a Class 1 felon due to sudden and intense passion would have failed where he fired at Whithers intentionally, rather than negligently or accidentally; (2) the arrest report reveals that he was arrested pursuant to a juvenile warrant, not an investigative alert; and (3) the issue regarding the constitutionality of the firearm enhancement was forfeited, as it could have been raised on direct appeal, and his 31-year sentence did not constitute a *de facto* life sentence.

¶ 31    Defendant asserts that postconviction counsel's decision not to amend the petition or respond to the State's arguments on the merits of the claims "shows she believed they were meritless." Relying on *People v. Greer*, 212 Ill. 2d 192 (2004), and *People v. Kuehner*, 2015 IL 117695, he maintains that counsel provided unreasonable assistance where she certified the adequacy of the merits of his *pro se* claims, which were frivolous as written, and then stood on the merits of the petition in the face of the State's motion to dismiss. As relief, defendant seeks remand for second-stage proceedings and the appointment of new counsel.

¶ 32    Defendant has not identified or suggested any amendment that he believes counsel should or could have made to his petition so that it would survive dismissal. As such, he is, in essence, solely asserting that counsel was required to withdraw from representing him because his petition was meritless, and that her failure to do so denied him his right to reasonable assistance of postconviction counsel.

¶ 33    It is well-settled that, under *Greer*, an attorney who concludes that the claims in a *pro se* postconviction petition are frivolous and patently without merit may withdraw from the case. *Greer*, 212 Ill. 2d at 205, 211 (noting that under Illinois Supreme Court Rule 137 (eff. Jan. 1, 2018), an attorney cannot in good faith pursue claims he or she determines are meritless). It is also settled that, if a petition has advanced to the second stage of proceedings on an explicit finding by the circuit court that it is not frivolous or patently without merit, an attorney who is seeking to withdraw must explain why the court's assessment was incorrect. *People v. Kuehner*, 2015 IL 117695, ¶ 21. However, as noted by our supreme court in *People v. Huff*, 2024 IL 128492, this court has split on the issue of whether postconviction counsel "may stand on a *pro se* petition that counsel knows to be frivolous." *Id.* ¶¶ 14-16 (discussing the conflict but not resolving it). Although

defendant presents that question in this case, we, like our supreme court in *Huff*, do not reach it. See *id.* ¶ 16.

¶ 34   In *Huff*, the defendant filed a postconviction petition raising a claim under *Apprendi v. New Jersey*, 530 U.S. 466 (2000), and arguing that, even though he had raised an *Apprendi* claim earlier, the claim was not barred by *res judicata* because of intervening developments in the law. *Huff*, 2024 IL 128492, ¶ 8. He further argued that his petition's untimeliness should be excused because his sentence was void. *Id.* The petition was automatically advanced to the second stage due to the time limit, and counsel was appointed. *Id.* ¶ 1. Counsel filed a Rule 651(c) certificate stating, *inter alia*, that no amendments were necessary. *Id.* ¶ 9.

¶ 35   The State filed a motion to dismiss, arguing that the petition was untimely, the claim was barred by *res judicata*, and, if there was an *Apprendi* violation, defendant was not prejudiced. *Id.* Postconviction counsel did not file a response and, at the hearing on the State's motion, made no additional argument and stated she would rest on her certificate and the petition. *Id.* ¶¶ 1, 9. The circuit court granted the State's motion to dismiss, finding that the *Apprendi* claim was barred by *res judicata*. *Id.* On appeal, this court affirmed over the defendant's argument that counsel rendered unreasonable assistance by neither amending the petition nor withdrawing because the *Apprendi* claim was frivolous. *Id.* ¶ 15.

¶ 36   The Illinois supreme court granted the defendant's petition for leave to appeal, which asked the court to resolve the split among the appellate districts over whether postconviction counsel, if he or she believes a *pro se* petition is frivolous, must move to withdraw or whether counsel has a choice between withdrawing or standing on the *pro se* petition. *Id.* ¶ 11. However, the court did not reach the issue. *Id.* ¶ 16. Instead, the *Huff* court found that the record contained "no indication

*** that postconviction counsel knew, or even believed, that [the] petitioner's claim was frivolous or patently without merit." *Id.* ¶ 30. As such, the court held that, when there is no first-stage ruling by the circuit court and the *pro se* petition presents a weak legal claim in its best possible legal form, counsel has no duty to withdraw. *Id.*

¶ 37    The *Huff* court concluded that the defendant had not rebutted the presumption of reasonable assistance where counsel filed a Rule 651(c) certificate, the defendant had not identified any amendment necessary to adequately present his *pro se* claim, and there was no showing that counsel knew the *pro se* claim was frivolous or patently without merit, rather than merely weak. *Id.* ¶ 34. In coming to this conclusion, the *Huff* court observed that "[t]his is not a situation where postconviction counsel confessed to the motion to dismiss or informed the court that petitioner's contentions had no merit." *Id.* ¶ 31. The court also noted that "the court, not counsel, is the ultimate arbiter of whether 'the claims in the petition are meritorious' and that "[d]ifferent counsel may differ in their opinions regarding the merits of the petition." *Id.* ¶ 29 (quoting *People v. Urzua*, 2023 IL 127789, ¶ 41).

¶ 38    We find *Huff* dispositive. Here, as in *Huff*, we find that there is no indication in the record that postconviction counsel believed defendant's claim to be frivolous or patently without merit. In fact, counsel here went beyond the actions taken by the attorney in *Huff*, as she filed a written response to the State's motion to dismiss, addressing in detail the reasons why she believed the petition should not be dismissed due to being untimely. At the hearing on the State's motion, she referenced the written response and then, like the attorney in *Huff*, indicated she was standing on the pleadings. See *id.* ¶ 31.

¶ 39    As in *Huff*, counsel did not confess to the motion to dismiss or inform the court that defendant's contentions were meritless. *Id.* Instead, her actions support a conclusion that she did not know or believe that the petition was frivolous and patently without merit. See *id.* ¶¶ 30-31; see also *People v. Johnson*, 2024 IL App (1st) 221943-U, ¶ 22 (rejecting argument that counsel believed the *pro se* postconviction petition to be frivolous and patently without merit where counsel arranged for the defendant's unsworn affidavit to be notarized and "encapsulated" the basis for the defendant's claim at the hearing on the State's motion to dismiss); Ill. S. Ct. R. 23(e)(1) (eff. Feb. 1, 2023) (nonprecedential orders entered on or after January 1, 2021, may be cited for persuasive purposes). Counsel therefore was not obligated to withdraw, and defendant has failed to rebut the presumption that counsel provided reasonable assistance. See *Huff*, 2024 IL 128492, ¶ 34. Accordingly, we affirm the circuit court's grant of the State's motion to dismiss the petition.

¶ 40    For the reasons explained above, we affirm the judgment of the circuit court.

¶ 41    Affirmed.

¶ 42    JUSTICE PUCINSKI, specially concurring:

¶ 43    I write because I am concerned that postconviction counsel did not amend the petitioner's petition to include his verified affidavit.

¶ 44    The verified affidavit is required. 725 ILCS 5/122-1(b).

¶ 45    Although the trial court, in dismissing his postconviction petition apparently did not rely on the missing affidavit, the postconviction counsel certified that his petition did not need an amendment.

¶ 46    In this case, the missing affidavit does not seem to be a turning point.  But we do not know because it was not there for the trial court to consider.  That affidavit is the petitioner's way to explain why he thinks he is entitled to the relief sought.

¶ 47    In his petition, the petitioner said his untimely filing of the petition was due to his state of mental health at the time he was preparing the petition.  The State and the trial court instead took that to mean he was talking about his mental fitness at the time of the crime.  Those are two different things, and his affidavit might have made his point more clearly.

¶ 48    Where a liberty interest is at stake, even a missing affidavit might make a difference, and I believe that postconviction counsel owed it to her client to make sure one was filed.