2024 IL App (1st) 221943-U

Fourth Division
Filed February 29, 2024

No. 1-22-1943

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE
APPELLATE COURT OF ILLINOIS
FIRST DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS,<br><br>    Plaintiff-Appellee,<br><br>    v.<br><br>OCTAVEN JOHNSON,<br><br>    Defendant-Appellant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Appeal from the<br>Circuit Court of Cook County<br><br>No. 17 CR 09228<br><br>The Honorable Anjana Hansen,<br>Judge, presiding. |

JUSTICE OCASIO delivered the judgment of the court.
Presiding Justice Rochford and Justice Martin concurred in the judgment.

**ORDER**

¶ 1   *Held:*  The presumption that postconviction counsel provided reasonable assistance was not rebutted, even though counsel did not amend the *pro* se petition, where the record did not show that counsel believed that the petitioner's claim was frivolous.

¶ 2   Octaven Johnson appeals the circuit court's order dismissing his postconviction petition on the State's motion. In this court, he does not challenge the circuit court's order on the merits. Instead, he argues that he was denied his right to the reasonable assistance of postconviction counsel because counsel did not seek to withdraw from the representation on the basis that his claim was frivolous. Because the record does not show that counsel believed that the claim was frivolous, we reject Johnson's argument and affirm.

¶ 3                                   BACKGROUND

¶ 4     At around 11 a.m. on Sunday, May 28, 2017, Johnson was riding in a car that was pulled over for a traffic violation on the far north side of the village of Niles. An officer told Johnson to step out of the car, and he did. But when he stood up, a loaded Hi-Point Model JHP—a .45 caliber semiautomatic pistol—fell from his waistband onto the seat. That was a problem: Johnson had recently been released from his third prison sentence on a felony conviction. He was arrested and ultimately charged with three counts of being an armed habitual criminal, five counts of unlawful possession or use of a firearm, and seven counts of aggravated unlawful use of a weapon under various theories and combinations of prior convictions.

¶ 5     A little more than a year after his arrest, the attorneys and the assigned judge held an off-the-record conference under Illinois Supreme Court Rule 402(d)(1) (eff. July 1, 2012). After the conference, the trial court indicated that it would recommend a sentence of 11 years, and Johnson decided to accept that sentence and plead guilty to being an armed habitual criminal.

¶ 6     At the subsequent change-of-plea hearing, the court informed Johnson what the applicable sentencing range was for being an armed habitual criminal and confirmed the sentence it had recommended at the Rule 402(d)(1) conference:

> "THE COURT: Now, the sentencing range on this Class X felony, which would be served at 85 percent, could range from 6 to 30 years in the Illinois Department of Corrections that includes a three-year period of mandatory supervised release also known a[s] parole, probation is not an eligible sentence and there could be a fine of $25,000, not to exceed $25,000. Do you understand the range?
>
> THE DEFENDANT: Yes.
>
> THE COURT: At a 402 conference we discussed your background and I said if you pled guilty, I would give you 11 years IDOC at 85 percent. Do you understand what happened in the 402 conference?

THE DEFENDANT: Yes.

THE COURT: Do you have any questions about the 402 conference or what happened back there?

THE DEFENDANT: No, sir.

THE COURT: And your lawyer talked to you about that 402 conference, correct?

THE DEFENDANT: Yes."

The court accepted Johnson's plea of guilty to one count of being an armed habitual criminal and noted for the record that the State was nol-prossing the remaining charges. It went on to impose sentence:

"THE COURT: It's 11 years IDOC. The PSI was waived. There is a three-year period of MSR and $479 in mandatory fees and costs. Is that your agreement, State and defense?

[ASSISTANT STATE'S ATTORNEY]: Yes.

[ASSISTANT PUBLIC DEFENDER]: Yes.

THE COURT: Do you understand the sentence?

THE DEFENDANT: Yes.

THE COURT: Do you have any questions about it?

THE DEFENDANT: No."

Consistent with the pronouncement of sentence, the written sentencing order stated that Johnson's sentence was for 11 years and that he was being "ordered to serve 3 years Mandatory Supervised Release." It further ordered that Johnson would have "to serve 85 percent of time."

¶ 7 Following his conviction, Johnson did not file a motion to withdraw the plea or reduce the sentence, and he did not attempt to appeal. See Ill. S. Ct. R. 604(d) (eff. July 1, 2017).

¶ 8 In June 2021, Johnson filed a *pro se* petition under the Post-Conviction Hearing Act (725 ILCS 5/art. 122 (West 2020)) raising a single claim involving his guilty plea and the underlying plea agreement. The factual basis for the claim, as set forth in the petition and Johnson's

unnotarized affidavit, was that, when he pleaded guilty, he was aware that his sentence included a 3-year term of mandatory supervised release but did not know that the mandatory-supervised-release term would be served in addition to his bargained-for sentence of 11 years rather than as part of that 11-year sentence. The underlying legal theory, however, was less clear. The petition emphasized that Johnson entered his plea knowingly and voluntarily, but it also alleged that he believed that he would serve the 3-year mandatory-supervised-release term within the 11-year sentence. The petition repeatedly cited *People v. Whitfield*, 217 Ill. 2d 177 (2005), in support of his claim, but it acknowledged that Johnson had been admonished that he would have to serve a term of mandatory supervised release. The petition also argued that, apart from his plea deal, statutory law required all mandatory-supervised-release terms to be served within the sentence of imprisonment, not in addition to it. The relief sought by the petition was for Johnson's sentence to be restructured as an 8-year prison term followed by a 3-year mandatory-supervised-release term.

¶ 9    Four days after Johnson filed his postconviction petition, the circuit court appointed the public defender and advanced the proceedings to the second stage.

¶ 10    In May 2022, postconviction counsel filed a typewritten and notarized copy of Johnson's affidavit and, several days later, a Rule 651(c) certificate. See Ill. S. Ct. R. 651(c) (eff. July 1, 2017). Among other things, counsel certified that she had not amended Johnson's *pro se* petition because, in her view, no amendments were necessary to adequately present his claim.

¶ 11    The State filed a motion to dismiss in November 2022 arguing that Johnson had bargained for a sentence of 11 years' imprisonment plus 3 years' mandatory supervised release and had therefore received the benefit of his bargain. Postconviction counsel did not file a response.

¶ 12    Three days later, the court heard argument on the motion to dismiss. Postconviction counsel waived Johnson's appearance. The State argued that Johnson's claim failed because he had been admonished about the three-year term of mandatory supervised release and "specifically agreed" to the sentence imposed. Postconviction counsel argued as follows:

"Your Honor, I believe that my client's claims are well articulated within his petition, and I'm simply resting on his pleadings, but I would just note for your Honor for the record that while he does not wish to withdraw his plea of guilty, he is seeking the benefit of the bargain.

Mr. Johnson's claim is that he was unaware that the addition of the 3 years mandatory supervised release would, in effect, extend his sentence from 11 years to 14 years.

And while he pled guilty, he believed that he'll [*sic*] be serving a total sentence of 11 years, not 14. As such, he's asking this Court to adjust his sentence to reflect the benefit of the bargain and that his sentence be modified to reflect such so that his incarceration and term of mandatory supervised release total 11 years, not 14."

The court reserved ruling on the motion until Johnson could be present.

¶ 13    Six weeks later, in December 2022, with Johnson "present via video writ," the court granted the State's motion and dismissed the postconviction petition. It understood the petition as claiming that, when Johnson pleaded guilty, "he was not aware that there was a mandatory supervised release of three years." It found that, based on the transcript of the plea hearing, Johnson was admonished that the sentencing range included a term of mandatory supervised release, that the oral pronouncement of sentence included a three-year term of mandatory supervised release, and that Johnson indicated that he understood both the range and the sentence that was imposed. The court therefore found that Johnson's claim had "no merit" and dismissed the petition.

¶ 14                                    ANALYSIS

¶ 15    The Post-Conviction Hearing Act (725 ILCS 5/art. 122 (West 2022)) provides a method for collaterally attacking convictions based on claimed deprivations of constitutional rights. See *id.* § 122-1(a)(1). As construed judicially, the statute provides for a three-stage proceeding. See

*People v. Gomagala*, 2013 IL 113688, ¶¶ 32-34. At the first stage, the court conducts an initial review of the petition for the sole purpose of screening out petitions that are "frivolous" or "patently without merit," which are summarily dismissed. 725 ILCS 5/122-2.1(a)(1) (West 2022). Petitions that survive summary dismissal are advanced to the second stage, where the petition can be amended as necessary and where the State can file a motion to dismiss testing the legal and factual sufficiency of the petition's claims. *Id.* §§ 122-2.1(b), 122-5. If the petition is not dismissed, then the State files an answer, and the proceeding advances to the third and final stage, where the court conducts an evidentiary hearing on the surviving claims and then orders relief as necessary to remedy a proven violation of the petitioner's constitutional rights. *Id.* §§ 122-5, 122-6.

¶ 16 On appeal, Johnson argues that he was denied his right to the reasonable assistance of postconviction counsel. By statute, indigent postconviction petitioners have a right to the assistance of appointed counsel, a right that attaches when the petition is advanced past the first stage. See *id.* § 122-4; *People v. Urzua*, 2023 IL 127789, ¶ 56. It has long been settled that the Post-Conviction Hearing Act "can not perform its function unless the attorney appointed to represent an indigent petitioner ascertains the basis of his complaints, shapes those complaints into appropriate legal form and presents them to the court." *People v. Slaughter*, 39 Ill. 2d 278, 285 (1968). These basic duties are codified in Rule 651(c), which requires counsel to certify that he or she (1) consulted with the petitioner to ascertain the petitioner's claims, (2) examined the trial record, and (3) amended the *pro se* petition as necessary to adequately present the petitioner's claims. Ill. S. Ct. R. 651(c) (eff. July 1, 2017). Postconviction petitioners are entitled to a reasonable level of assistance from counsel, and Rule 651(c) helps ensure that they get it. *People v. Addison*, 2023 IL 127119, ¶ 20. Whether postconviction counsel failed to provide reasonable assistance is a legal issue that we review *de novo*. *People v. Russell*, 2016 IL App (3d) 140386, ¶ 10 (citing *People v. Suarez*, 224 Ill. 2d 37, 41-42 (2007)).

¶ 17 Here, postconviction counsel filed a certificate of compliance with Rule 651(c), which created a rebuttable presumption that she provided a reasonable level of assistance. *Addison*, 2023 IL 127119, ¶¶ 20, 21. The question, then, is whether the record rebuts that presumption. *Id.* ¶ 20.

¶ 18    Johnson's argument that he was denied the reasonable assistance of counsel rests on an unusual premise. Rather than arguing that counsel failed to properly present a potentially meritorious claim, he contends that the claim raised in his *pro se* petition was frivolous. Because the petition was frivolous, he reasons, postconviction counsel was ethically bound to withdraw from the representation, and her failure to do so denied him his right to reasonable assistance. It is settled that, when confronted with a petition that is entirely frivolous, postconviction counsel may seek leave to withdraw from the representation. *People v. Greer*, 212 Ill. 2d 192, 211 (2004). It is also clear that any request to withdraw must explain why the petitioner's claims lack even arguable merit, although the precise requirements vary depending on the procedural history of the case. *People v. Kuehner*, 2015 IL 117695, ¶ 21. Our courts have split, however, on a related question: if postconviction counsel determines that a petition is entirely frivolous, does it violate the petitioner's right to the reasonable assistance of counsel for counsel to stand on the frivolous petition rather than seeking leave to withdraw? See *People v. Huff*, 2024 IL 128492, ¶¶ 14-16 (discussing the conflict but not resolving it). Although the parties set that question before us, we do not reach it because, as in *Huff*, the record does not show that postconviction counsel here determined that Johnson's petition was frivolous.

¶ 19    In *Huff*, the defendant was found guilty of murdering his five-year-old daughter. *Huff*, 2024 IL 128492, ¶¶ 3-4. At sentencing, he waived his right to a jury, and the court found that he was eligible for the death penalty based on the age of the victim and the exceptionally brutal and heinous nature of the crime, a finding that required him to be sentenced to natural life when the court ultimately chose not to sentence him to death. *Id.* ¶ 5. On direct appeal, the defendant challenged his sentence on the basis that it was premised on a finding entered by the judge rather than the jury. *Id.* ¶ 6; see *Apprendi v. New Jersey*, 530 U.S. 466 (2000). After the appellate court rejected that challenge, he raised it again in a petition for relief from judgment, which found the claim barred by *res judicata*. *Huff*, 2024 IL 128492, ¶¶ 6-7.

¶ 20    Several years later, the defendant filed a postconviction petition raising the *Apprendi* claim and arguing that it was not barred by *res judicata* because of intervening developments in the law

and that the petition's untimeliness should be excused because his sentence was void. *Huff*, 2024 IL 128492, ¶ 8. The petition reached the second stage by default, and counsel was appointed. *Id.* ¶ 9. Rather than filing an amended petition, counsel filed a Rule 651(c) certificate stating that no amendments were necessary. *Id.* When the State filed a motion to dismiss on the basis of *res judicata*, untimeliness, and the merits of the claim, counsel did not file a response. *Id.* At argument, counsel merely rested on the *pro se* petition, and the circuit court granted the motion to dismiss. *Id.* That judgment was affirmed on appeal over the defendant's argument that counsel rendered unreasonable assistance by neither amending the petition nor withdrawing because the claim was frivolous. *Id.* ¶ 15

¶ 21    The supreme court granted leave to appeal to decide whether postconviction counsel can permissibly choose to stand on a petition known to be frivolous, but it ultimately did not reach that question. *Id.* ¶ 16. Instead, it found that the record contained "no indication *** that postconviction counsel knew, or even believed, that [the] petitioner's claim was frivolous or patently without merit," which meant that counsel did not have a duty to withdraw. *Id.* ¶ 30. That, combined with the petitioner's failure to identify any amendments that could have been made to the petition, meant that the record did not rebut the presumption that counsel provided reasonable assistance. *Id.* ¶ 34.

¶ 22    We find *Huff* dispositive here. There is no indication in the record that postconviction counsel believed Huff's claim to be frivolous or patently without merit. If anything, the record shows otherwise. Unlike the attorney in *Huff*, Johnson's postconviction counsel's representation was not limited to standing on the petition. Before the State filed its motion to dismiss, she arranged for Johnson's unsworn affidavit to be notarized, a technical step that was necessary to properly present the affidavit in support of Johnson's claim. See *People v. Allen*, 2015 IL 113135, ¶ 35. At the argument on the motion to dismiss, counsel also briefly encapsulated the basis for Johnson's claim, which was that his understanding of the plea deal was that his "total sentence" would be 11 years, not 14 years. These actions, however minor, served to help Johnson present his claim to the court. Counsel had a professional obligation not to "assist[] *** in needlessly consuming the time and energies of the court" by presenting a frivolous claim. *Greer*, 212 Ill. 2d at 207; see also

Ill. R. Prof'l Conduct (2010) R. 3.1 (eff. Jan. 1, 2010). If counsel believed that Johnson's claim was frivolous, taking affirmative steps to present it to the court would have violated her basic ethical duties. The record therefore supports the conclusion that postconviction counsel believed that Johnson's claim was not frivolous.

¶ 23    The procedural history of this case bolsters that conclusion. In *Huff*, the *pro se* petition was advanced to the second stage because the circuit court did not act on it. *Id.* ¶ 9. Here, by contrast, Johnson's petition was advanced to the second stage by the circuit court only eight days after it was filed, reflecting "an affirmative determination that, on its face, the petition was neither frivolous nor patently without merit." *Kuehner*, 2015 IL 117695, ¶ 20. From the perspective of postconviction counsel, that distinction mattered. When a petition advances to the second stage by default, no court has assessed its arguable merits. Consequently, "appointed counsel [is] the *very first person* to lay eyes on and assess the *pro se* petition." (Emphasis in original.) *Id.* ¶ 19. It is therefore entirely possible that such a petition is frivolous on its face. When the court advances a petition to the second stage because it has arguable merit, however, that is no longer true, and postconviction counsel is "not responsible for evaluating the facial sufficiency of the defendant's *pro se* petition in the first instance." *Id.* ¶ 20. Because the circuit court found arguable merit to Johnson's petition, postconviction counsel had no obligation "to second guess the trial court's first-stage finding." *Id.* ¶ 20. Counsel was entitled to rely on the court's determination that Johnson's claim was not frivolous unless and until she "discover[ed] something that ethically would prohibit [her] from actually presenting the defendant's claim to the court." *Id.* ¶ 21. So, unlike the attorney in *Huff*, postconviction counsel here did not even need to conduct an independent assessment of whether the petition was frivolous on its face, and there is no indication that she did so.

¶ 24    Johnson also suggests that his claim was so obviously frivolous as to justify an inference that counsel "could not have thought there was any merit" to it. We do not agree. In this court, Johnson argues that he raised a claim based on *People v. Whitfield*, 217 Ill. 2d 177 (2005), which holds that, when the defendant pleads guilty for a specific term of years but is not admonished about mandatory supervised release, due process may require the term of imprisonment to be

reduced by the length of the mandatory-supervised-release term, ensuring that the defendant is not denied the benefit of his bargain. *Id.* at 190-91, 205. But Johnson's petition expressly alleged that he was admonished that his sentence would include a term of mandatory supervised release, taking his claim out of the direct ambit of *Whitfield*. Based on her argument at the hearing on the State's motion to dismiss, postconviction counsel construed Johnson's claim to be that he believed he was pleading guilty in exchange for a total sentence length of 11 years, including a 3-year mandatory-supervised-release term. And that claim was not entirely frivolous because it had an arguable basis in law and in fact. See *People v. Hodges*, 234 Ill. 2d 1, 11-12 (2009) (defining "frivolous or patently without merit"). Although it is highly unlikely that the parties would have stood mute when the court imposed an 11-year prison term if the plea agreement had actually called for 8 years in prison followed by 3 years on mandatory supervised release, that implied factual basis for Johnson's claim was neither fantastic nor delusional. See *Hodges*, 234 Ill. 2d at 19 ("[A] belief that allegations are unlikely, without more, is insufficient to justify dismissing a petition."). Had those been the terms of the plea deal, moreover, then Johnson may well have been entitled to specific performance of that agreement, which means there was at least an arguable legal basis for the claim.[1] See *Whitfield*, 217 Ill. 2d at 189 (discussing a defendant's due-process right to enforce plea agreements). To be sure, Johnson ultimately did not make the "substantial showing of a constitutional violation" that was necessary to survive the State's motion to dismiss. *Hodges*, 234 Ill. 2d at 10-11 & n.3. He did not, for instance, supply an affidavit from any party about what took place during plea negotiations or a transcript of the Rule 402(d)(1) conference supporting Johnson's understanding of the plea deal. But that did not render his claim frivolous.

¶ 25    Finally, the parties dispute the viability of a claim that was not raised in the *pro se* petition involving the propriety of one of the predicate offenses underlying Johnson's conviction in this

---

[1]    We recognize that Johnson's alleged understanding of the plea deal might also have supported a claim that his guilty plea was entered unknowingly. See *Whitfield*, 217 Ill. 2d at 184 (discussing *Boykin v. Alabama*, 395 U.S. 238 (1969)). However, he expressly alleged in his *pro se* petition that "his plea was made knowingly."

case for being an armed habitual criminal. This argument is purely academic because, as Johnson correctly concedes, postconviction counsel has no duty to raise a claim that is unrelated to the one in his petition. *People v. Pendleton*, 223 Ill. 2d 458, 475-76 (2006). We need not—and should not—address it here. See *Peach v. McGovern*, 2019 IL 123156, ¶ 64 ("Courts of review will not decide moot or abstract questions, will not review cases merely to establish precedent, and will not render advisory opinions.").

¶ 26                                                       CONCLUSION

¶ 27    The record does not show that postconviction counsel either believed or should have known that Johnson's *pro se* postconviction petition was frivolous. Hence, Johnson has not rebutted the presumption that counsel provided reasonable assistance.

¶ 28    For the foregoing reasons, we affirm the judgment of the circuit court.

¶ 29    Affirmed.