2025 IL App (1st) 231656-U

SECOND DIVISION
June 24, 2025

No. 1-23-1656

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 05CR7950 |
| | ) | |
| CALANDRO ROBINSON, | ) | Honorable |
| | ) | Marc W. Martin, |
| Defendant-Appellant. | ) | Judge Presiding. |

_____

JUSTICE McBRIDE delivered the judgment of the court.
Justices Howse and Ellis concurred in the judgment.

**ORDER**

¶ 1    *Held*:   Defendant failed to establish his postconviction attorney provided unreasonable assistance where postconviction counsel complied with Supreme Court Rule 651(c) by filing a certificate pursuant to the Rule and argued the merits of defendant's claim in response to the State's motion to dismiss.

¶ 2    Defendant Calandro Robinson appeals the trial court's second stage dismissal of his successive postconviction petition, arguing that his postconviction counsel provided unreasonable assistance under Illinois Supreme Court Rule 651(c) (Ill. S. Ct. R. 651(c) (eff. July 1, 2017)). Specifically, defendant contends that his postconviction counsel erred by: (1) standing

on defendant's "unambiguously frivolous and patently without merit" successive postconviction petition and (2) failing to either amend defendant's *pro se* successive petition or file a motion to withdraw. The State asserts that this court should decline to review defendant's unreasonable assistance claim because defendant's successive petition was erroneously advanced to second-stage proceedings without a finding by the trial court that defendant satisfied the necessary cause and prejudice test for filing a successive petition. In the alternative, the State maintains that defendant's postconviction attorneys provided reasonable assistance.

¶ 3    Following a jury trial, defendant was convicted of two counts of attempt first degree murder, home invasion, aggravated battery, and armed violence in the February 2005 stabbings of Akesha Scott and Melissa Westbrook. We briefly summarize the evidence presented at defendant's jury trial. A full discussion of the evidence presented at defendant's trial is set forth in defendant's direct appeal. See *People v. Robinson*, No. 1-08-1521 (2010) (unpublished order under Supreme Court Rule 23).

¶ 4    In February 2005, Akesha Scott was married but separated from her then-husband, defendant. At the time of the offenses, Scott and her children were living with her friend Westbrook and Westbrook's children at 310 Stratford Circle in Streamwood. When Scott and Westbrook returned home from a weekend away, Scott found defendant hiding in her bedroom closet. Defendant told Scott that he had received a "refund check", for which Scott had been waiting, at his apartment in Elgin. Scott then followed the defendant in her car to his apartment in Elgin to get the refund check. While on the way to defendant's apartment, Scott lost sight of defendant's car. When she arrived at defendant's apartment, he was not there, and his car was nowhere in sight. Scott then returned to her home.

¶ 5    Westbrook estimated that approximately 20 to 30 minutes after Scott and defendant left,

defendant came back to Westbrook's home alone and "kicked in the door." Westbrook, her two daughters and Scott's two sons were in the house. After defendant "swung" at Westbrook with his fists, she stood up and "swung back at him." Defendant then went into the kitchen and Westbrook heard him "shuffling" through the silverware. Defendant returned to the living room with a kitchen knife and stabbed Westbrook in her abdomen. She tried to fight back but defendant continued to stab her. Defendant stabbed Westbrook eight times in various parts of her body, including her neck, abdomen, fingers and elbows. When the headlights of Scott's car appeared outside, Westbrook testified that defendant "turned around and went out the front door." Westbrook and her two daughters escaped and went to a neighbor's home for help.

¶ 6    When Scott returned home for the second home and she was taking her suitcase from the trunk, she saw defendant run "full speed" towards her. He knocked her to the ground and began stabbing her with a knife. Scott rolled around on the ground, but defendant continued to stab her. She said, " 'I can't believe you [are] stabbing me.,' " and defendant responded, " 'You f*** b***. I am going to kill you.' " Scott attempted to grab the knife from defendant but was unable to take it from him. Defendant did not stop stabbing her until she "laid on the ground and acted like [she] was dead." When Scott heard defendant go back into the house, she ran to a neighbor's home to call the police.

¶ 7    After defendant was arrested and was being transported to the police station, he initiated a conversation with the detectives by "inquiring about the well-being of" Scott and Westbrook. Defendant specifically asked, "if they were both dead or did they survive." At some point during the drive, defendant also said, " 'It's not like I can deny being there. I have their blood all over my clothes.' " Defendant was advised of his *Miranda* rights, indicated that he understood his rights, and continued speaking with the detectives. He made further statements regarding how

Westbrook was "attempting to destroy his marriage" with Scott and that he did not remember much of the incident "because everything happened so fast when he started stabbing" the victims.

¶ 8    Later, defendant gave a statement to an assistant State's Attorney (ASA) regarding the stabbing of Scott and Westbrook. Defendant admitted to entering Scott's house when she was not there and was found the next day near Scott's bedroom closet. He further admitted that he returned to Scott's house while Scott was following him to his apartment. He entered Scott's house and got into an argument with Westbrook. He took a knife from the kitchen and stabbed Westbrook multiple times. When defendant saw Scott pull into the driveway, he went outside and started stabbing Scott. He did not know how many times he stabbed Scott, but he thought she was dead.

¶ 9    Defendant testified at trial and recounted the events leading up to the stabbing. His testimony was generally consistent with his statement to the ASA. Defendant added that he did not intend to kill either Scott or Westbrook.

¶ 10   The jury found defendant guilty of the attempted first degree murder of Scott, the attempted first degree murder of Westbrook, home invasion, armed violence, and aggravated battery. The trial court subsequently sentenced defendant to 15 years for each count of first degree murder, 9 years for home invasion, 9 years for armed violence, to be served consecutively for an aggregate term of 48 years. The trial court also sentenced defendant to a concurrent term of 6 years for aggravated domestic battery.

¶ 11   On direct appeal, defendant argued that: (1) he was deprived of his constitutional right to a fitness determination; (2) the trial court failed to strictly comply with the requirements of Supreme Court Rule 431(b) (Ill. S. Ct. R. 431(b) (eff. July 1, 2012); (3) the trial court improperly

convicted defendant of both attempted first degree murder and the lesser charges of armed violence and aggravated battery; and (4) the trial court erred in sentencing defendant on the charge of aggravated domestic battery when the jury did not find defendant guilty of that charge. *Robinson*, No. 1-08-521, at 1. The reviewing court affirmed defendant's convictions and sentences for the attempted first degree murders of Scott and Westbrook, and his conviction and sentence for home invasion. The court vacated defendant's conviction and sentence for armed violence, vacated his conviction for aggravated battery, vacated defendant's sentence for aggravated domestic battery, and his aggregate sentence was reduced to 39 years. See *id*. at 40.

¶ 12     In June 2011, defendant filed his initial *pro se* postconviction petition and argued that: (1) he should have been acquitted of home invasion as charged in the indictment because the trial evidence did not establish that he was armed with knife; and (2) his trial and appellate counsel were ineffective. The trial court summarily dismissed defendant's petition. This court affirmed the dismissal of defendant's petition after granting appellate counsel's motion for leave to withdraw pursuant to *Pennsylvania v. Finley*, 481 U.S. 551 (1987). *People v. Robinson*, No. 1-11-2916 (2013) (unpublished order under Supreme Court Rule 23).

¶ 13     Defendant moved for leave to file his *pro se* successive postconviction petition in 2015 alleging a claim of ineffective assistance of trial counsel. He argued that he satisfied the requisite cause to file his successive petition because he "did not learn of [the] legal basis for claim [*sic*] until told so by paralegal on July 1, 2014." Defendant contended that his trial counsel provided ineffective assistance "regarding [a] plea bargain and [the] potential maximum sentence ***." Specifically, defendant asserted that his trial counsel advised him that the most defendant would receive following a trial was 15 years because counsel told defendant that he could have the attempt first degree murder charges reduced to aggravated battery. He further alleged that trial

5

counsel told him that the State did not "have a case" on the other charges. Based on this alleged "deficient advice," defendant declined a plea offer of a sentence of 12.5 years on one count of attempt first degree murder, to be served at 85%. He argued that he was prejudiced by his inability to raise this claim earlier because the incorrect sentencing advice deprived him of the opportunity to enter into a plea for a lesser sentence.

¶ 14    On July 15, 2015, the trial court granted defendant leave to file his successive postconviction petition and it was docketed instanter. The State was tendered a copy of the petition. The public defender was to be notified, as was defendant. The record on appeal does not indicate the trial court made any specific findings as to whether defendant satisfied the required cause and prejudice test before filing a successive petition. However, neither party has supplied this court with the report of proceedings for that date and no written order with the court's rationale is contained in the common law record. The case was subsequently presided over by a different judge in the circuit court.

¶ 15    Counsel from the public defender's office was appointed to represent defendant. In January 2021, defendant's postconviction counsel filed her Supreme Court Rule 651(c) (Ill. S. Ct. R. 651(c) (eff. July 1, 2017)) certificate, which stated that she: (1) had consulted with defendant in person, by mail, by phone or by electronic means to ascertain his contentions; (2) examined the report of proceedings at trial, appellate materials, and court files and had conducted interviews necessary to investigate defendant's contentions, "including 3 interviews with trial attorney"; and (3) "made any amendments to the motion necessary for the adequate presentation of defendant's contentions and defects in same." In March 2022, postconviction counsel filed an amended Rule 651(c) certificate and stated that counsel had interviewed defendant's trial counsel, reviewed the case file, including the trial counsel's notes from the Rule 402 conference.

Defendant's sworn and notarized affidavit was attached to counsel's certificate. Postconviction counsel did not amend defendant's successive petition.

¶ 16     In August 2022, the State moved to dismiss defendant's successive petition and argued that: (1) defendant's claim had been forfeited because defendant failed to provide a justified reason for failing to raise this claim in his previous petition; (2) defendant failed to demonstrate ineffective assistance of trial counsel; and (3) the trial court erroneously granted defendant leave to file without conducting a cause and prejudice analysis.

¶ 17     In November 2022, another public defender was assigned to defendant's case and filed a written response to the motion to dismiss. He argued that defendant made a substantial showing of a constitutional violation based on his trial counsel's ineffective assistance. Counsel contended defendant had demonstrated both prongs under *Strickland v. Washington*, 466 U.S. 668 (1984). He argued trial counsel's advice that defendant "faced no more than 15 years upon conviction was unambiguously incorrect" and constituted deficient performance. Further, counsel maintained that defendant was prejudiced because had defendant "been correctly advised of the sentencing range he faced if convicted at trial, he would have accepted the offer from the 402 conference and pleaded guilty."

¶ 18     Approximately a year later, in September 2023, following a hearing on the motion to dismiss, the trial court granted the motion on two grounds. First, the court found that defendant should have recognized this claim earlier and that his ignorance of the law did not provide cause for failing to timely file the petition. Second, the court dismissed the successive petition at the second stage on the merits.

¶ 19     Defendant argues on appeal that postconviction counsel was unreasonable for standing on defendant's "unambiguously frivolous and patently without merit" successive petition. More

specifically, counsel failed to address "the clear legal defect," *i.e.*, the alleged cause asserted in defendant's request for leave to file his successive petition. According to defendant, after the State raised this deficiency in its motion to dismiss, counsel "neither amended the *pro se* petition nor filed a motion to withdraw." The State maintains that postconviction counsel provided reasonable assistance.

¶ 20    The Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1(a)(1) (West 2020)) provides a tool by which those under criminal sentence in this state can assert that their convictions were the result of a substantial denial of their rights under the United States Constitution or the Illinois Constitution or both. *People v. Smith*, 2014 IL 115946, ¶ 22. Only one postconviction proceeding, however, is contemplated under the Act (*People v. Edwards*, 2012 IL 111711, ¶ 22), and a defendant seeking to file a successive postconviction petition must first obtain leave of court (*People v. Tidwell*, 236 Ill. 2d 150, 157 (2010)). As a result, the bar against successive postconviction proceedings should be relaxed only when (1) a defendant can establish "cause and prejudice" for the failure to raise the claim earlier or (2) he can show actual innocence under the "fundamental miscarriage of justice" exception. *Edwards*, 2012 IL 111711, ¶¶ 22-23; *Smith*, 2014 IL 115946, ¶ 30. Under the cause and prejudice test, a defendant must establish both (1) cause for his or her failure to raise the claim earlier and (2) prejudice stemming from his or her failure to do so. *Edwards*, 2012 IL 111711, ¶ 22 (citing *People v. Pitsonbarger*, 205 Ill. 2d 444, 459 (2002)).

¶ 21    The cause and prejudice standard for a successive petition is higher than the normal first stage "frivolous or patently without merit" standard applied to initial petitions. *Id.* ¶¶ 25-29; *Smith*, 2014 IL 115946, ¶ 35 ("the cause-and-prejudice test for a successive petition involves a higher standard than the first-stage frivolous or patently without merit standard that is set forth in

section 122-2.1(a)(2) of the Act"). "A defendant shows cause 'by identifying an objective factor that impeded his or her ability to raise a specific claim during his or her initial post-conviction proceedings.' " *People v. Wrice*, 2012 IL 111860, ¶ 48 (quoting 725 ILCS 5/122-1(f) (West 2010)). In other words, to establish "cause" a defendant must articulate why he could not have discovered the claim earlier through the exercise of due diligence. *People v. Wideman*, 2016 IL App (1st) 123092, ¶ 72. A defendant shows prejudice by demonstrating that the claim so infected the trial that the resulting conviction or sentence violated due process. *Wrice*, 2012 IL 111860, ¶ 48.

¶ 22     A motion for leave to file a successive petition is directed to the trial court and it is the court that must determine whether a defendant has satisfied the required *prima facie* showing of cause and prejudice. *People v. Bailey*, 2017 IL 121450, ¶ 24. If the defendant has satisfied this prerequisite, then the court will grant the defendant leave to file. *Id*. After the trial court grants defendant leave to file, the petition will be docketed for second-stage proceedings. *People v. Walker*, 2022 IL App (1st) 201151, ¶ 20.

¶ 23     At the second stage, the defendant may request counsel to be appointed to represent him or her, if necessary (725 ILCS 5/122-4 (West 2020)), and the State is allowed to file responsive pleadings (725 ILCS 5/122-5 (West 2020)). At this stage, the circuit court must determine whether the petition and any accompanying documentation make a substantial showing of a constitutional violation. See *People v. Sanders*, 2016 IL 118123, ¶ 37. If no such showing is made, the petition is dismissed. If a substantial showing of a constitutional violation has been shown, then the petition is advanced to the third stage, where the circuit court conducts an evidentiary hearing. 725 ILCS 5/122-6 (West 2020). When considering a motion to dismiss at the second stage of proceedings, we accept as true all factual allegations that are not positively

rebutted by the record. *People v. Johnson*, 2017 IL 120310, ¶ 14.

¶ 24    Initially, the State contends that we should not reach defendant's reasonable assistance claim because defendant's petition was improperly advanced to the second stage. While the record presented to this court does not contain the trial court's specific reasons for granting leave to file defendant's successive petition, the court explicitly granted leave to file, advanced the petition to second stage proceedings, and an attorney was appointed to represent defendant. See 725 ILCS 5/122-4 (West 2020). When a court advances a successive petition to second stage proceedings, the trial court has necessarily found that the requisite cause and prejudice has been satisfied. See *People v. Tidwell*, 236 Ill. 2d 150, 161 (2010) ( "[A] successive postconviction petition is not considered 'filed' *** and further proceedings will not follow, until leave is granted, a determination dependent upon a defendant's satisfaction of the cause-and-prejudice test."); *People v. Salgado*, 2024 IL App (4th) 230405-U, ¶ 47 (cited as persuasive authority under Illinois Supreme Court Rule 23) (concluding that while the record did not disclose any discussion of cause and prejudice when the petition was set for second stage review, the trial court implicitly found cause and prejudice had been satisfied when it advanced the petition). Thus, the successive petition was filed when the court granted defendant leave to file. See *People v. LaPointe*, 227 Ill. 2d 39, 44-45 (2007) (a successive postconviction petition is considered filed after leave to file is expressly granted by the circuit court in accordance with section 122-1(f) of the Act). The petition having been filed and docketed, we address defendant's claim that his postconviction counsel failed to provide reasonable assistance.

¶ 25    Defendant asserts he was denied reasonable assistance of postconviction counsel in a somewhat novel way. Rather than arguing counsel failed to properly present a potentially meritorious claim, defendant contends that his own argument to support the cause prong of the

cause and prejudice test was meritless. As he concedes, his ignorance of the law does not constitute an objective factor that impeded his ability to raise this claim. See *People v. Evans*, 2013 IL 113471, ¶ 13 (holding that a defendant could not claim ignorance of the law as "cause" to justify his failure to include a claim in his initial postconviction petition). Because defendant's cause argument was legally defective, postconviction counsel was either obligated to amend the petition to cure this defect or withdraw from the representation. Since counsel did neither, defendant was denied his right to reasonable assistance. Defendant asks this court to reverse the dismissal and remand for further second-stage proceedings, as well as the appointment of new postconviction counsel.

¶ 26　　The right to counsel in proceedings under the Act is not a constitutional right, but strictly a matter of legislative grace, derived from the Act. *People v. Huff*, 2024 IL 128492, ¶ 21 (citing *People v. Custer*, 2019 IL 123339, ¶ 30). Further, a postconviction defendant is entitled to only a reasonable level of assistance, which is a standard lower than that provided by the federal or state constitutions. *People v. Pendleton*, 223 Ill. 2d 458, 472 (2006). The supreme court has said this distinction is rational because trial counsel plays a different role than counsel in postconviction proceedings. *People v. Addison*, 2023 IL 127119, ¶ 19 (citing *People v. Owens*, 139 Ill. 2d 351, 364 (1990)). "While a defendant is presumed innocent prior to trial, a postconviction petitioner has already been stripped of the presumption of innocence." *Huff*, 2024 IL 128492, ¶ 21. Further, postconviction counsel's role is to shape a postconviction petitioner's complaint into the " 'proper legal form and to present those complaints to the court' rather than to 'protect postconviction petitioners from the prosecutorial forces of the State.' " *Id*. (quoting *Addison*, 2023 IL 127119, ¶ 19).

¶ 27　　To ensure that postconviction petitioners receive reasonable assistance, Rule

651(c) outlines the specific duties that postconviction counsel must follow in those proceedings. *Id*. ¶ 22. That rule provides that postconviction counsel file a certificate stating that he or she (1) consulted with the defendant to ascertain his contentions of the deprivation of a constitutional right, (2) examined the record of the proceedings at the trial, and (3) amended the defendant's *pro se* petition, if necessary, to ensure that defendant's contentions are adequately presented. Ill. S. Ct. R. 651(c) (eff. July 1, 2017). Substantial compliance with the rule is sufficient. *People v. Profit*, 2012 IL App (1st) 101307, ¶ 18. Once postconviction counsel has filed a Rule 651(c) certificate, a rebuttable presumption arises that postconviction counsel provided reasonable assistance. *People v. Custer*, 2019 IL 123339, ¶ 32.

¶ 28    The burden is on the defendant to overcome this presumption by demonstrating his postconviction counsel failed to substantially comply with the duties mandated by Rule 651(c). *People v. Addison*, 2023 IL 127119, ¶ 21. We review whether counsel substantially complied with Rule 651(c) *de novo*. *People v. Bass*, 2018 IL App (1st) 152650, ¶ 13. Under a *de novo* standard, we give no deference to the trial court's judgment or reasoning. *People v. Carlisle*, 2019 IL App (1st) 162259, ¶ 68. "*De novo* consideration means that the reviewing court performs the same analysis that a trial judge would perform." *Id*.

¶ 29    "Fulfillment of the third obligation under Rule 651(c) does not require postconviction counsel to advance frivolous or spurious claims on defendant's behalf. If amendments to a *pro se* postconviction petition would only further a frivolous or patently nonmeritorious claim, they are not 'necessary' within the meaning of the rule." *People v. Greer*, 212 Ill. 2d 192, 205 (2004). The supreme court has "repeatedly held that the purpose of Rule 651(c) is to ensure that counsel shapes the petitioner's claims into proper legal form and presents those claims to the court." *People v. Perkins*, 229 Ill. 2d 34, 43-44 (2007) (citing *People v. Pinkonsly*, 207 Ill. 2d 555, 568

(2003), quoting *People v. Owens*, 139 Ill. 2d 351, 364-65 (1990)).

¶ 30     Defendant was represented by multiple attorneys throughout his postconviction proceedings. However, it was his first appointed postconviction counsel who filed an initial and an amended Rule 651(c) certificate, attesting that she had reviewed defendant's contentions, spoke with defendant's trial counsel, reviewed trial counsel's notes, examined the trial court proceedings, and attached defendant's sworn affidavit. Once defendant's postconviction counsel filed the certificate of compliance pursuant to Rule 651(c), the successor postconviction counsel did not need to file a second certificate. *People v. Smith*, 2022 IL 126940, ¶¶ 16-33.

¶ 31     Defendant's successor postconviction counsel filed a written response to the State's motion to dismiss and argued that defendant had demonstrated a substantial constitutional violation based upon trial counsel's ineffectiveness. Postconviction counsel contended trial counsel's incorrect advice that defendant faced no more than 15 years after trial constituted deficient performance and defendant was prejudiced by relying on this advice to reject the plea offer of 12.5 years and then received a sentence of 39 years after conviction. Counsel presented this same response at the hearing on the State's motion. Neither postconviction counsel amended defendant's successive petition or moved to withdraw from defendant's case.

¶ 32     As pointed out by our supreme court in *Pendleton*, " 'post conviction counsel is only required to investigate and properly present the *petitioner's* claims.' " (Emphasis in original.) *Pendleton*, 223 Ill. 2d at 472 (quoting *Davis*, 156 Ill. 2d at 164). "Rule 651(c) only requires postconviction counsel to examine as much of the record 'as is necessary to adequately present and support those constitutional claims raised by the petitioner.' " *Id*. at 475 (quoting *Davis*, 156 Ill. 2d at 164).

¶ 33    Nevertheless, defendant contends his postconviction representation was unreasonable because his attorney did not address the State's claim that defendant's petition failed to establish cause. He asserts that while prior postconviction counsel filed a Rule 651(c) certificate, his successor counsel did not amend his petition in response to the State's argument that defendant lacked the requisite cause. Appellate counsel relies on *Greer*, in which the supreme court first held that an attorney who concludes that the claims in a *pro se* postconviction petition are frivolous and patently without merit may withdraw from the case. *Greer*, 212 Ill. 2d at 205, 211. Defendant also relies on *People v. Kuehner*, 2015 IL 117695, ¶ 21, in which the supreme court concluded that when a postconviction attorney seeks to withdraw after an explicit finding by the circuit court that the petition is not frivolous or patently without merit, that attorney must explain why the court's assessment was incorrect. Under this precedent, defendant maintains that when counsel failed to amend his petition to cure this legal defect, the only option available was for counsel to ask to withdraw from the case.

¶ 34    Recently, the supreme court issued a decision in *People v. Huff*, 2024 IL 128492. In that appeal, the defendant filed a *pro se* postconviction petition arguing that "his natural life sentence, based on the trial judge's finding that the offense was 'exceptionally brutal and heinous,' was unconstitutional under *Apprendi* [*v. New Jersey*, 530 U.S. 466 (2000)]." *Id.* ¶ 8. Appointed counsel filed a Rule 651(c) certificate, but did not amend the defendant's petition or make any additional arguments at the hearing on the State's motion to dismiss, which the trial court granted. *Id.*

¶ 35    Before the appellate court, the defendant argued that "because his *pro se* petition was deficient on its face, postconviction counsel acted unreasonably by neither amending the petition

nor moving to withdraw if she believed his petition could not be cured by an amendment." *Id.* ¶ 10.

¶ 36 The supreme court framed the issue before it as "whether postconviction counsel's decision to file a Rule 651(c) certificate and stand on petitioner's *pro se* postconviction petition, rather than either amending the petition or moving to withdraw, rebutted the presumption of reasonable assistance." *Id.* ¶ 13. The *Huff* court acknowledged a split in the appellate districts over whether postconviction counsel must move to withdraw or whether counsel has a choice between withdrawing or standing on the petition, if he or she believes a *pro se* petition is frivolous. *Id.* ¶¶ 14-16. Rather than resolve the split, the supreme court considered whether the defendant "rebutted the presumption of reasonable assistance where there was no indication that postconviction counsel *knew* the claim to be frivolous." (Emphasis added.) *Id.* ¶ 16.

¶ 37 The defendant argued that his "*pro se* petition was frivolous as written and required dismissal during second-stage proceedings absent an amendment to state a nonfrivolous claim," and his postconviction counsel was obligated to either amend the petition or withdraw. *Id.* ¶ 14. According to the defendant, "his showing that postconviction counsel rested on the petition rebutted the presumption of reasonable assistance, requiring remand for further second-stage proceedings with newly appointed counsel." *Id.* The defendant did not identify any necessary amendments to his *pro se* petition that could have been made by counsel to allow the petition to survive dismissal but instead argued that his claim was frivolous. *Id.* ¶ 24. Further, the defendant argued that his postconviction counsel had only one option, and that was to withdraw. The State argued that counsel was only required to make the amendments necessary to shape the defendant's claims into the proper legal form but was not required to make frivolous amendments or find new claims beyond those identified by the defendant. *Id.* ¶ 25. The State

also argued that postconviction counsel's Rule 651(c) certificate created the presumption that no amendments were available. Therefore, the defendant failed to rebut the presumption by identifying anything in the record that showed counsel failed to make a necessary amendment or suggesting any amendments counsel could have made. *Id*.

¶ 38    The *Huff* court concluded the defendant failed to rebut the presumption of reasonable assistance by postconviction counsel based upon the following. The Rule 651(c) certificate created a presumption that no required amendments were available, there was no showing on the record that postconviction counsel knew that defendant's claim was frivolous or patently without merit, the defendant had not identified any amendment that was necessary, and there was no showing counsel knew that the *pro se* claim was frivolous or patently without merit, rather than simply weak. *Id*. ¶ 34. The supreme court also found "this was not a situation where postconviction counsel confessed to the motion to dismiss or informed the court that petitioner's claim had no merit." *Id*. ¶ 31. Finally, the court emphasized that it is the trial court, not counsel, who ultimately determines whether claims in a petition are meritorious and that different attorneys may differ in their opinions on the merits of a petition. *Id*. ¶ 29 (citing *People v. Urzua*, 2023 IL 127789, ¶ 41).

¶ 39    Following *Huff*, the appellate court in numerous decisions has considered and rejected similar arguments to that advanced by defendant here. For example, in *People v. Johnson*, 2024 IL App (1st) 221943-U, ¶¶ 5-6 (cited as persuasive authority under Illinois Supreme Court Rule 23), the defendant pled guilty to being an armed habitual criminal in exchange for a sentence of 11 years with an additional 3 years of mandatory supervised release (MSR). Some years later, the defendant filed a *pro se* postconviction petition and argued that at the time of his plea he was unaware that his period of MSR was to be served in addition to his 11-year sentence. He asserted

that he believed the MSR was part of the 11-year term. The trial court advanced the petition to the second stage and appointed counsel. *Id*. ¶¶ 8-9. Postconviction counsel subsequently filed a notarized copy of the defendant's affidavit and a Rule 651(c) certificate indicating that no amendments were necessary to present the defendant's claim. *Id*. ¶ 10. The State moved to dismiss and contended that the defendant had received the benefit of his bargain. Postconviction counsel did not file a response and at the hearing on the motion, counsel briefly restated the defendant's claim and then rested on the defendant's pleadings. The trial court granted the State's motion and dismissed the petition. *Id*. ¶¶ 11-13.

¶ 40     On appeal, the defendant asserted that he was denied reasonable assistance from his postconviction counsel. He did not allege that counsel failed to raise a meritorious claim, but rather, he argued that the claim he raised in his petition was frivolous, and thus, his postconviction counsel was ethically bound to withdraw, and her failure to do so denied him reasonable assistance. *Id*. ¶ 18. The reviewing court considered *Greer*, *Kuehner*, and *Huff*, with the latter being "dispositive." The *Johnson* court found "no indication in the record" that postconviction counsel believed the defendant's claim was frivolous or patently without merit. The court observed that "[i]f anything, the record shows otherwise," and pointed out that counsel, unlike the attorney in *Huff*, did not stand on the petition. Postconviction counsel filed the required notarized affidavit and "briefly encapsulated" the defendant's claim at the hearing on the motion to dismiss. The reviewing court noted that these actions, " however minor," helped to present the defendant's claim to the trial court. Additionally, the court reasoned that if postconviction counsel believed that the defendant's claim was frivolous, "taking affirmative steps to present it to the court would have violated her basic ethical duties" and the record supports the conclusion that counsel did not believe the defendant's claim was frivolous. *Id*. ¶ 22.

¶ 41    Additionally, the *Johnson* court discussed how the procedural history supported its conclusion. Relying on *Kuehner*, the court observed that the trial court had advanced the petition, showing an affirmative determination that the petition was neither frivolous nor patently without merit. *Id*. ¶ 23. "Because the circuit court found arguable merit to [the defendant's] petition, postconviction counsel had no obligation 'to second guess the trial court's first-stage finding.' " *Id*. (quoting *Kuehner*, 2015 IL 117695, ¶ 20). The reviewing court further found that postconviction counsel

> "was entitled to rely on the court's determination that [the defendant's] claim was not frivolous unless and until she 'discover[ed] something that ethically would prohibit [her] from actually presenting the defendant's claim to the court.' So, unlike the attorney in *Huff*, postconviction counsel here did not even need to conduct an independent assessment of whether the petition was frivolous on its face, and there is no indication that she did so." *Id*. (quoting *Kuehner*, 2015 IL 117695, ¶ 21).

¶ 42    Similarly, the reviewing court in *People v. Bradley*, 2024 IL App (1st) 230809-U, ¶ 33 (cited as persuasive authority under Illinois Supreme Court Rule 23), rejected the defendant's assertion that a postconviction attorney ethically must withdraw when faced with a frivolous postconviction petition. In that case, the defendant was found guilty of first degree murder following a jury trial and later sentenced to a term of 55 years. *Id*. ¶¶ 5-6. In his *pro se* postconviction petition, he alleged that he was denied due process and equal protection when the trial court "ordered that he be held to answer without a formal charge or a prompt preliminary hearing" and "the court's order that he be held to answer was voidable." *Id*. ¶ 8. The petition was automatically docketed for second stage review without the preliminary review by the trial court.

Postconviction counsel was appointed and later filed her Rule 651(c) certificate, indicating that no amendments were necessary to present the defendant's claims. *Id*. ¶ 9. The State moved to dismiss and postconviction counsel did not file a response. At the hearing on the motion, postconviction counsel rested on the defendant's petition and then briefly argued that the defendant believed that his due process and his equal protection rights had been violated and was seeking to have that sentence reversed, reviewed and discharged. *Id*. ¶ 11. The trial court granted the State's motion to dismiss.

¶ 43    The defendant argued on appeal that he was denied reasonable assistance because his postconviction claim was frivolous and therefore, his attorney was ethically bound to withdraw. *Id*. ¶ 21. The *Bradley* court reviewed the holdings from *Greer*, *Kuehner*, and *Huff*. As in *Johnson*, the reviewing court found *Huff* dispositive and observed that, "just as in *Huff*, there is no indication in the record that postconviction counsel knew that the petitioner's claims were frivolous or patently without merit." *Id*. ¶ 30. The court noted that, like *Huff*, the defendant's *pro se* petition adequately set out his claims, including a defense to forfeiture by asserting appellate counsel's ineffectiveness. *Id*. Further, in contrast with *Huff*, postconviction counsel went beyond standing on the petition and briefly argued the defendant's position at the hearing. The *Bradley* court recognized that this small action helped the defendant present his claims to the court. The court concluded that based on the record before it, and consistent with *Huff*, it was "compelled to conclude" that the defendant failed to rebut the presumption of reasonable assistance created by the filing of the Rule 651(c) certificate. *Id*. ¶ 31.

¶ 44    The reviewing court further disagreed with the defendant's assertion that nothing in the record suggested that postconviction counsel found the claims had merit. The court noted that the defendant was attempting to "circumvent the presumption created by the filing of the Rule

651(c) by improperly shifting the burden of proof onto the State." *Id*. ¶ 33. Concluding that the defendant failed to rebut this presumption, the court observed that the defendant failed to point to any portion of the record, which affirmatively shows that postconviction counsel knew or even believed that the defendant's claims lacked merit. *Id*. See also *People v. Buchanan*, 2024 IL App (1st) 221579-U, ¶ 43 (This court held that "an attorney is not unreasonable for standing on the original petition and filing a Rule 651(c) certificate where the petition cannot be amended to raise viable nonfrivolous claims."); *People v. Rodriguez*, 2025 IL App (1st) 221248-U, ¶ 37 (The defendant failed to rebut the presumption that postconviction counsel was reasonable where there was no affirmative indication in the record that counsel knew the *pro se* claims were frivolous or patently without merit.); *People v. Castillo*, 2025 IL App (1st) 230988-U, ¶ 29 (Postconviction counsel "had no duty to withdraw where the record does not show that he knew defendant's claim of actual innocence was frivolous"); *People v. Coates*, 2024 IL App (1st) 230921-U, ¶ 39 (finding that counsel was not obligated to withdraw when the postconviction counsel did not confess to the motion to dismiss or inform the court that defendant's contentions were meritless); *People v. Adams*, 2024 IL App (4th) 230347-U, ¶ 20 (finding the defendant failed to show that postconviction counsel had an ethical obligation to withdraw); *People v. Merriweather*, 2024 IL App (1st) 221719-U, ¶ 40 (postconviction counsel was not obligated to withdraw where nothing suggested that counsel knew the defendant's petition was frivolous or patently without merit and counsel did not abandon the defendant's claim).

¶ 45   Defendant attempts to distinguish the present case from the holding in *Huff* and relies primarily on *Greer* and *Kuehner*. However, *Greer* and *Kuehner* detail the process when postconviction counsel chooses to withdraw. But that is not what occurred here because defendant's postconviction attorney did not seek to withdraw or assert that defendant's claims

were frivolous and patently without merit.

¶ 46    We conclude that *Huff* and the more recent decisions from our appellate court control. Defendant has not rebutted the presumption that his postconviction counsel provided reasonable assistance. Counsel representing defendant during his successive postconviction proceedings pursued the merits of defendant's ineffective assistance claim. There is no indication in the record that postconviction counsel thought defendant's claim was frivolous or without merit. The attorney represented defendant following the trial court's initial granting of leave to file, which as noted above necessarily included a finding that the cause and prejudice test had been satisfied. See *Tidwell*, 236 Ill. 2d at 161. The question of cause had been answered and the merits of defendant's claim was before the trial court. See *Bailey*, 2017 IL 121450, ¶ 24 (it is the court that must determine whether a defendant has satisfied the required *prima facie* showing of cause and prejudice). Appointed counsel's "task is not to second guess" the trial court's initial finding but rather is to move the process forward by cleaning up the defendant's *pro se* claims and presenting them to the court for adjudication. *Kuehner*, 2015 IL 117695, ¶ 20. Postconviction counsel focused on this task during second stage proceedings.

¶ 47    Further, the initial postconviction counsel attested in her Rule 651(c) certificate that she had interviewed defendant's trial counsel and reviewed counsel's notes on the plea hearing conducted pursuant to Rule 402. Initial counsel also indicated in her amended Rule 651(c) certificate that she had obtained defendant's affidavit for his petition, a technical step that was necessary to properly present defendant's claim. See *People v. Allen*, 2015 IL 113135, ¶¶ 35, 38 (where postconviction counsel is unable to remedy the lack of notarization of an attached statement, the State may challenge this defect at second-stage proceedings and the postconviction court may disregard the statement and dismiss the petition if it is not otherwise

supported by a notarized affidavit).

¶ 48     Here, successor counsel went beyond the actions taken by the attorney in *Huff*, and did not stand silent on defendant's petition but rather, counsel filed a written response addressing the ineffective assistance of counsel standard under *Strickland v. Washington*, 466 U.S. 668 (1984). See *Huff*, 2024 IL 128492, ¶ 31. Counsel focused his response on the primary claims asserted in the State's motion, specifically that defendant's ineffective assistance claim had been forfeited and lacked merit. Counsel argued that defendant set forth a substantial showing of a constitutional claim of ineffective assistance of trial counsel. At the hearing, successor counsel argued the merits of defendant's ineffective assistance claim that trial counsel misadvised defendant of the maximum sentence and had defendant been correctly informed, he would have accepted the State's plea offer. When asked by the postconviction court why defendant did not raise this claim in his initial postconviction, counsel responded that as defendant "describes in his petition, he is forthright with the court, he was not aware at an earlier time of this particular claim." Counsel never conceded that defendant's cause argument lacked merit, nor was he bound to address the State's suggestion that the trial court revisit the cause and prejudice test. See *Johnson¸* 2024 IL App (1st) 221943-U, ¶ 23 (quoting *Kuehner*, 2015 IL 117695, ¶ 20) ("Because the circuit court found arguable merit to [the defendant's] petition, postconviction counsel had no obligation 'to second guess the trial court's first-stage finding.' "). In fact, contrary to the State's claim, postconviction counsel could presume that there was cause and prejudice set out in defendant's *pro se* successive petition. See *Tidwell*, 236 Ill. 2d at 161; *Salgado*, 2024 IL App (4th) 230405-U, ¶ 47.

¶ 49     Also, defendant fails to suggest how counsel could have amended defendant's petition to establish a nonfrivolous cause argument as required for a successive petition. As stated above,

nothing in the record shows that defendant's postconviction attorneys believed petition was frivolous and/or lacked merit. Notably, the initial postconviction counsel stated in her Rule 651(c) certificate that she complied with the rule, including interviewing trial counsel, and the successor postconviction counsel argued both in a written response and at the hearing that defendant had made a substantial showing of a constitutional violation of ineffective assistance of trial counsel. Neither attorney suggested that defendant's constitutional claim lacked merit. Further, successor counsel acknowledged defendant was "forthright" in his assertion of cause and did not confess that this argument lacked merit. While this argument may have been weak and was rejected by another judge at the second stage, there has been no showing that counsel believed the petition to be frivolous. Consistent with *Huff*, we conclude that defendant has failed to rebut the presumption of reasonable assistance created by the filing of the Rule 651(c) certificate. See *Huff*, 2024 IL 128492, ¶ 34.

¶ 50    For all of the reasons cited above, we affirm the decision of the circuit court of Cook County.

¶ 51    Affirmed.